UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ELIYAHU KHANKIN, | Case No. 24-cv-04030-SVK |
|---|---|
| Plaintiff, | |
| v. | **ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| CSL BEHRING, L.L.C., | Re: Dkt. No. 27 |
| Defendant. | |

The history of this employment case is set forth in the Court's orders on Defendant CSL Behring, L.L.C.'s motion to dismiss the original complaint (Dkt. 15) and motion to dismiss the first amended complaint (Dkt. 24). Now before the Court is Defendant's motion to dismiss one cause of action in Plaintiff's second amended complaint (Dkt. 25 – the "SAC"): the eleventh cause of action for invasion of Plaintiff's privacy rights under the California Constitution. Dkt. 27. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 6, 8. The motion is suitable for determination without oral argument. Civ. L.R. 7-1(b). Having reviewed the SAC, the Parties' briefs, the litigation history, and the relevant law, Defendant's motion to dismiss the eleventh cause of action in the SAC is **GRANTED WITHOUT LEAVE TO AMEND**.

The Court's December 17, 2024 Order on Motion to Dismiss First Amended Complaint dismissed with leave to amend Plaintiff's eleventh cause of action for invasion of his constitutional right to privacy on the grounds that the first amended complaint ("FAC") did not sufficiently allege facts that plausibly alleged that the "Insights Discovery" personality test administered by Defendant invaded Plaintiff's privacy rights. Dkt. 24 at 5. Specifically, the Court held that "the FAC allege[d] in a conclusory and speculative fashion, without sufficient supporting factual allegations, that the personality test 'may reveal details about an individual's disabilities' and 'could expose sensitive medical details'" and "[e]ven considering this claim in light of the allegations at FAC ¶¶ 18-20, the FAC fail[ed] to allege sufficient facts that Defendant disclosed private information or otherwise intruded into Plaintiff's privacy 'in a manner highly offensive to

a reasonable person.'" *Id.* (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)).

In the SAC's factual background section, paragraph 17 (which describes the Insights Discovery test and its color fields) and paragraphs 18 and 20 (which discuss Plaintiff's concerns about the test, including conclusory statements regarding the test's "impact" and "potential impact" on neurodiverse employees) are unchanged from the FAC. Paragraph 19 of the SAC adds an allegation that the "assigned HR representative[] lacks any qualification to administer and/or interpret this test, and lacks formal training in PHI (Protected Health Information) management." Dkt. 25 ¶ 19. The privacy claim in Plaintiff's SAC adds the following allegations to those in the FAC:

> The personality test would tend to reveal various medical conditions including but not limited to revealing whether an individual is autistic or otherwise neurodivergent. Employee's medical information should be safeguarded and not revealed. However, Defendant utilized the personality tests and decided to reveal the results of individuals' tests to their co-workers. Conducting a test that would tend to reveal employees' medical diagnoses constitutes an invasion of privacy. More specifically, Defendant revealed the results of Plaintiff's personality test. Individuals like Plaintiff, who are neurodivergent, will tend toward personality types like extrovert. Both Preiss and Mezzanotte are physicians and are very well aware of the HIPAA compliance when it comes to personal's medical condition. They should have understood that tests that could reveal medical conditions like autism risk violating HIPAA.

Dkt. 25 ¶ 230.

Defendant argues that Plaintiff's privacy claim remains deficient because he has still "fail[ed] to provide any facts showing how the personality test could reveal any disability or medical condition." Dkt. 27 at 1. Specifically, Defendant asserts that Plaintiff has failed to allege facts supporting how the personality test, which categorizes individuals into a "color energy" (Cool Blue, Earth Green, Sunshine Yellow, or Fiery Red) that represents personality traits and working styles, could reveal the test-taker's medical conditions. *Id.* at 4-5. Defendant also attacks Plaintiff's "bald speculation that neurodivergent individuals tend to be extroverts" because (1) it is undermined by Plaintiff's allegations elsewhere in the complaint that he and other neurodivergent individuals have difficulty with social situations; (2) Plaintiff has not alleged any connection

between any of the color energies and an extroverted personality; and (3) Plaintiff has not alleged how an extroverted personality could reveal a disability or medical condition. *Id.* at 5.

Plaintiff opposes the motion to dismiss, arguing that his allegations regarding the Insights Discovery personality test are sufficient. Dkt. 28. Among other things, Plaintiff argues that "[e]ven if the test does not result in a specific diagnosis, Courts have held, after discovery is conducted, that personality tests similar to the one administered by Defendant, such as the Minnesota Multiphasic Personality Inventory (MMPI), have a tendency to reveal disabilities which are protected." *Id.* at 4 (citing *Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 835 (7th Cir. 2005)). In *Karraker*, the Seventh Circuit reversed the district court's order granting summary judgment to defendant employer on an Americans with Disabilities ("ADA") claim and remanded for entry of summary judgment in favor of the plaintiffs on their claim that the MMPI is a medical examination under the ADA. *Karraker*, 411 F.3d at 838. That case "largely turn[ed] on whether the MMPI is designed to reveal a mental impairment." *Id.* at 835. The court in *Karraker* held that although a high score on one aspect of the MMPI did not necessarily mean the test-taker had paranoid personality disorder, "it seems likely that a person who does, in fact, have paranoid personality disorder, and is therefore protected under the ADA, would register a high score on [that aspect of the test]" and thus the test was "designed, at least in part, to reveal mental illness." *Id.* at 837. The MMPI at issue in that case "considers where an applicant falls on scales measuring traits such as depression, hypochondriasis, hysteria, paranoia, and mania. In fact, elevated scores on certain scales of the MMPI can be used in diagnoses of certain psychiatric disorders." *Karraker*, 411 F.3d at 833-34.

On reply, Defendant correctly points out that *Karraker* involved a different personality test than the Insights Discovery test administered by Defendant. Dkt. 29 at 4. By contrast to the MMPI test in *Karraker*, which was "designed, at least in part, to reveal mental illness" (*Karraker*, 411 F.3d at 837), the SAC does not allege that the Insights Discovery test administered by Defendant was in any way designed to reveal a test-taker's neurodiversity or other information about the test-taker's mental or physical health. Moreover, the SAC continues to contain speculative allegations about what information the Insights Discovery test "would tend to reveal"

3

(Dkt. 25 ¶ 230) that lack factual support.

*Karraker* was at the summary judgment stage, whereas here the Court need only assess whether Plaintiff has plausibly stated a claim for invasion of privacy. But the only concrete allegations in the SAC are that Plaintiff had to take the Insights Discovery test and that the test assigns colors/personality types. Plaintiff fails to allege facts that link the color groups to a medical condition. The closest Plaintiff comes to supporting such an inference is the statement in the SAC that neurodivergent individuals "will tend towards personality types like extrovert." Dkt. 25 ¶ 230. But Plaintiff does not allege any facts to support this conclusory statement. Even if the test did categorize individuals as introverts or extroverts (which is not apparent from the allegations of the SAC), there are no factual allegations to support the inference that Plaintiff seeks to have the Court draw: that colors equate to medical data for which there is a right to privacy. In sum, the allegations added to the SAC do not address the deficiencies identified in the Court's order on the motion to dismiss the FAC.

The Court concludes that Plaintiff has failed to state a claim for invasion of privacy despite several opportunities to do so. Accordingly, Defendant's motion to dismiss the eleventh cause of action in the SAC is **GRANTED WITHOUT LEAVE TO AMEND**.

**SO ORDERED.**

Dated: March 6, 2025

SUSAN VAN KEULEN
United States Magistrate Judge